This case is in Re Lundahl. Thank you, your honor. Thank you, your honors, for hearing this case today. I appreciate that. This is my first time before this court, and actually... Welcome. Thank you. It's my first time before any court. My father and grandfather were both solicitors in the patent office, and they tried many cases, so it's a real honor for me to be here today and present this case on what I consider to be a very important issue, which is commercial success and secondary considerations. Well, how do you get by Keene and Lazarick? Assuming you say the proper pronunciation is Keene. I'm sorry, your honor. I don't know that case. Well, no, it's not the case. It's prior art. K-E-H-N-E is that... Keene. Keene and Lazarick. So Keene and Lazarick. How do you get by those words? I addressed that in my reply brief. Keene seems to have all the elements of the window frame, and Lazarick has a Velcro screen, so why wouldn't one of skill and the art say let's just slap them together in something other than a car? Well, you know, as they said in Graham v. John Deere, let's not slip into hindsight. Let's consider the issues in the case and the evidence. Well, what is it that's going to suggest that that's a hindsight analysis to say one of skill and the art would simply find it quite easy, simple to make that combination? Well, as I set forth in my reply brief, they argued that they had a very strong prima facie case and that these issues of secondary considerations and commercial success shouldn't even be considered because their prima facie case was so strong. But the point is that if you take a screen that's shown in Lazarick, I think it was the Lazarick reference where they had a screen that went on the frame of a car window and had the Velcro on it, and you were to combine that with a casement window, you would end up putting that combination, would end up putting that screen on the outside of the casement window. That's going to be inoperable. It's just like an N. Ray Gordon. Well, but why wouldn't one of skill and the art know that it's inoperable and so put it on the inside? I mean, you can put Velcro anywhere, can't you? It's where you put the hooks and the loops. So one of skill and the art isn't going to make an inoperable combination, they're going to make an operable combination and put it on the inside. I would say that KSR did not overturn N. Ray Gordon. And if you took the filter... KSR did, Mr. Cocknell, to pick up your discussion with introduce what I'll call for want of a better term, sort of a common sense practical element into the equation. It said we've been too rigid in one aspect of our obviousness approach, and they did introduce that element, it seems to me, and that does seem to be fairly applicable here given that you have a fairly simple art and some pretty strong references in that setting. Well, KSR did not overturn the concept of the requirement that you have evidence and common sense. And, you know, this is a point of many discussions between patent attorneys. You know, common sense is basically a reason to ignore evidence. And sure, anything is common sense. It's an excuse for hindsight. And, you know, we've made arguments that, you know, sure, it would be common sense in N. Ray Gordon to turn the filter around so it would operate right, but that was not the holding. The combination that they're showing in these references would result in an inoperable system, and it would go against the principles of the references. And we also made an N. Ray Adams argument, and, you know, that that was a teaching away. And that's really covered in my reply brief. But your teaching away argument is based on a passing statement of more or less permanent in the Keene reference? Right. So more or less means it's not always permanent, right? It's not always permanent, but if you have to climb to the second story of a building and try to change your screens because they're on the outside then of the frame. Yeah, but we've kind of been through that once. Velcro is easily attached to any surface, so why wouldn't one in the art, we're assuming one of skill has a certain awareness of how to design windows, they would put it on the inside, knowing that velcro can be attached to any surface, you'll put it on the most convenient one, won't you? And wouldn't that be true of any one of skill in the art? It would go around the inside of the frame, as the teachings would show, but it wouldn't go between the frame and the sash. And one of the large benefits is that every time you close that window, it helps to further seal that velcro. And, you know, so that is the problem with what they call a strong prima facie case. You know, this is an additional advantage. And we've shown in the declarations many advantages of this invention, you know, it doesn't corrode. And, you know, and going back to the common sense argument, you know, why, you know, lost my train of thought there, I'm sorry. But yeah, if they can argue common sense, why couldn't we argue that why hasn't somebody done this before? You certainly can. And the point is, is that nobody's done this. It's much cheaper, it looks better, and it's a much better system than what has been, than the aluminum screens. Aluminum screens corrode in a saltwater environment. So the other arguments with regard to the evidence of commercial success. How do you, the problem with commercial success is linking it directly to the claimed invention. Correct. How do we know that these sales weren't just a result of crafty marketing and other aspects of the marketplace? There were two declarations filed during the prosecution of the application. One was by Mr. Randy Helzer. Mr. Helzer was the chief sales person for the licensee. Those have a lot of ambiguities. They include the Velcro screen system. He says also they're for windows and doors. Correct. Which doors aren't claims, so that's not the claimed invention. He says the contract was awarded in really the claimed invention or something else that caused those sales? A large part of, they are correct. My client is here, these are common people. He's got a small window company in Fort Collins, Colorado, and these declarations do show that a large part of these sales were for the windows of the claimed invention. But the question is, taking that, as you say, assume that one reads the declarations as standing for the proposition that a large part of the sales were for embodiments in the invention. Still, you have to overcome what I think I'd have to say is a strong prima facie case of obviousness based on the references that you've been discussing. Isn't there some ambiguity in those statements by your clients that maybe make it impossible for them to overcome the prima facie case? There are specific statements in the declaration, paragraph 22 of Randy Helzer's. It says the architect in the above $580,000 contract selected the frameless Velcro screen specifically because of the features of the invention. And he goes on to say that the architect specifically did not want a conventional frame. That is the nexus, at least for that sale of $580,000. The architect, who was the customer in this case, also had a declaration. He said that he wanted the claimed invention screens because it offered aesthetic and functional differences over any other known solutions. That's the nexus. Now, at least that's the nexus for the $580,000. And I see I'm running out of time here, so I will... We'll presume you have full rebuttal time, Mr. Cochran. Thank you. Mr. Wood? May it please the Court, Your Honor. This Court does not need to rely on common sense because the Board specifically found a motivation to combine the Akeem and Lazarek references, which was to render the screen easily removable. And that motivation has not been disputed by Mr. Lundahl in either his opening brief or his reply brief. When I had a conversation with Mr. Cochran a minute ago, he could see some reason to combine the two. But what would account for the claimed requirement that the Velcro would be placed between the window and this movable sash, thereby providing a tighter seal, a particularly attractive feature of the claimed invention? That limitation is actually expressly taught in Keene with respect to the framed screen. So it would basically be placing the Velcroed screen in exactly the same position as the framed screen is in Keene, which was between the movable sash and the fixed frame. But you've got one of skill in the art now, and he's going to take the Lazarek, a rather humorous reference. I called it the car thief's dream to have Velcroed windows. But what about Lazarek teaching that you put it on the outside? What's going to motivate one to move it to the inside and then pinch it between the window and the sash? Actually, Lazarek teaches placing the Velcroed screen on the inside, not on the outside. I thought the picture showed the outside, but that's... This is the inside of the window, the figure one of Lazarek? Yes, Your Honor. Okay. Does that account, you think, for the...between the window and the sash then? Well, I think the best way to account for that would be the fact that Keene teaches...that's where Keene teaches placing the screen between the movable sash and the fixed frame. So it would be essentially placing the Velcroed screen in exactly the same position as the screen is placed in the prior art. So what Lazarek gives you is the Velcro that's missing from Keene. Exactly, Your Honor. Lazarek not only gives you the Velcro, but it gives you the concept of using Velcro to attach a screen to a window opening. And there's nothing in Lazarek that makes the fact that it's a window opening of an automobile particularly important. Mr. Lundahl's basic argument is that $6.3 million worth of commercial success is sufficient to overcome the prima facie case of obviousness. And the problem, however, is that the board reasonably determined that you cannot conclude that there is in fact $6.3 million worth of commercial success based on the two affidavits that he provided. Well, how do you deal with the paragraph 22 where there does seem to be a specific link of the Velcro screen to at least half a million dollars of sales? I think you would need to read paragraph 22 in conjunction with paragraph 21, which qualifies the total $580,000 by saying due in part to the aesthetic value. And paragraph 22 is a further explanation of what in fact that aesthetic value is. And that is also the contract that Mr. Thompson talks about, and he even further qualifies that contract by saying that the award itself was due in part to the frameless Velcro screen system. That's in paragraph 7. Do these commercial success statistics have much weight absent some comparison to the entire window market? No, Your Honor. They really don't have much weight. It's hard to really evaluate commercial success based on raw sales numbers, and this Court has found that in a number of cases. I believe In-Rae Wong is a good example of that. It's just hard to really evaluate commercial success based on raw sales numbers when in fact we don't know if that's a small or large portion of the entire market. Still, half a million dollars is meaningful. I mean, they've made a big sale, and somebody says it's because of this invention. You'd have to qualify even that half a million dollars, though, Your Honor, because again, there's a suggestion that there are other factors that came into play. So there is no nexus between that full half a million dollars and the claimed invention. In other cases, this Court has made a similar analysis when there are hundreds of millions of dollars of commercial success. Like In-Rae Paulson, there were half a billion dollars' worth of commercial success, and yet that was not found to have to overcome the promofacia case of obviousness based on lack of nexus with respect to the claims held to be obvious. That's all I have, Your Honor, unless this Court has any additional questions. Thank you, Mr. Boyd. Mr. Cochran, you have your full five minutes. Your Honors, with regard to the doing part, I just wanted to address that issue. Sure. Sales are always doing to the various factors, and they can't all be attributed to one single factor. These declarations are by individuals. These are honest, candid declarations, and I think you can see that when you read the declarations. When you read them as a whole, they show commercial success. This is a highly, highly competitive business. Every ex-football player ends up starting a window company or a kitchen cabinet company. This is a highly competitive business, and this invention is cheaper. It's better. It's more aesthetic, and he has done very well with this. He builds high-end windows where the customers don't want an aluminum frame, and nobody else has done this. And so anyway, that, I think, so I guess my point is that these are honest and candid declarations. I think if you read them as a whole, you will see that they do present evidence of commercial success of this invention. Thank you very much. Thank you, Mr. Cochran.